**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| JACK TEIXEIRA, | § | |
| | § | Civil Action No. 26-2158 |
| Plaintiff, | § | |
| | § | Hon. |
| vs. | § | |
| | § | |
| FEDERAL BUREAU OF PRISONS and | § | |
| TODD BLANCHE, in his official capacity | § | |
| as Acting Attorney General of the United | § | |
| States, | § | |
| | § | |
| Defendants. | § | |

**COMPLAINT**

Comes now Plaintiff, Jack Teixeira, by and through his undersigned counsel, and files this Complaint, and in support thereof states as follows:

**I.      Preliminary Statement**

1.      Plaintiff is currently confined at ADX Florence, serving a 15-year sentence for leaking national defense information on Discord when he was a 21-year-old Air National Guardsman. In this action brought under the Administrative Procedure Act, the First Amendment, and the Due Process Clause, Plaintiff seeks relief from Special Administrative Measures (SAMs) that have atypically restricted his liberties including his communication with his immediate family members. The SAMs rest on a grievous misunderstanding. On an ABC News interview in May 2025, when asked if he "would have" committed his crime knowing what he knows now, Plaintiff answered affirmatively, explaining that, in his Discord communications, he had intended to educate Americans about the Ukraine War and that he acted out of patriotism, not out of any intent to harm his country. His quote, that he "would have done it again," has been misconstrued to mean that he would commit the offense again *in the future*. But he would not, nor has he said he would.

1

All he said is that, counterfactually, if he were to travel *back* in time, his knowledge today would not be material: he still would have felt justified in his (admittedly regrettable) actions. None of that justifies the inference that he presently poses a national-security risk, nor is there any other reasoned basis for the implementation of the SAMs.

2.      Plaintiff has wholeheartedly accepted responsibility and expressed genuine remorse for his actions that led to his conviction. He did so to the criminal sentencing court, he did so to his military sentencing court, and he has done so in an application for executive clemency, which he submitted to President Trump last year and which remains pending.

3.      After sentencing and prior to his ABC News interview, Plaintiff was confined in general population at FCI Petersburg, a medium-security prison. Now, he is in solitary confinement at ADX Florence (conventionally, "Supermax"), where he is confined to his cell for at least 23 hours a day and is subjected to more restrictive conditions than some of history's most infamous terrorists—even though Plaintiff has never even been accused of violence or of acting for a foreign power. Plaintiff does not directly challenge the decision to confine him at ADX Florence, given the discretion of the Bureau of Prisons over security classifications and placement determinations. Rather, Plaintiff seeks this Court's review of what is reviewable: the SAMs, which have unjustifiably resulted in extreme restrictions of his basic liberties.

## II.    Parties

4.      Plaintiff is a 24-year-old American citizen.

5.      Defendant Federal Bureau of Prisons ("BOP") is an agency of the United States Department of Justice. BOP has implemented the SAMs, under 28 C.F.R. § 501.2, at the request of the United States Attorney General.

6.    Todd Blanche is the Acting Attorney General of the United States and is sued in his official capacity.

## III.    Jurisdiction and Venue

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

8.    This Court has personal jurisdiction over Defendants because Defendants are subject to nationwide general personal jurisdiction.

9.    Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(C).

## IV.    Statement of Facts

10.    In March 2024, Plaintiff pleaded guilty in the District of Massachusetts to six violations of 18 U.S.C. § 793(e) that arose from his retention and transmission of national defense information.

11.    On November 12, 2024, Plaintiff was sentenced to 15 years in prison and three years of supervised release.

12.    In January 2025, Plaintiff was transferred to FCI Petersburg Medium, a medium-security facility near Richmond, Virginia.

13.    On May 20, 2025, Plaintiff participated in a telephone interview with an ABC News reporter (the "ABC Interview").

14.    On the ABC Interview, Plaintiff admitted his actions, expressed regret for the harm that he had caused to his friends and family, and denied that he acted with any anti-American intent.

15.    On the ABC Interview, Plaintiff stated, "My intent was to educate the United States populace, the people, about what was going on. It was not to harm the United States as a country because I love my nation. I'm a patriot."

16.    On the ABC Interview, the reporter asked, "If you had the chance to do this again, would you take the same action?" In response, Plaintiff stated, "I believe that I would have. Considering everything that was going on at the time, I believe I would have, yes."

17.    On the ABC Interview, the reporter then stated, "That action came with a 15-year prison sentence. And so, knowing that, you would still take that action." Plaintiff replied, "Yeah. I mean, it's, it would, it's, we can always go back, and I've tortured myself over and over and over again about what would happen if I didn't do this, or what would happen if this and that, and, in reality it doesn't really matter because all that you're doing, all that I was doing to myself was hurting myself and trying to guess at events and circumstances that were far beyond my ability to perceive. I could always make guesses but until you're living in that moment and doing what you're doing, you're not going to really understand of [*sic*] what could I have done, what should I have done, et cetera, so. But I still do believe that, yes, I would have done it again."

18.    In the remarks recited in Paragraphs 16 and 17, Plaintiff was not in any way referring to repeating his actions in the future.

19.    In the remarks recited in Paragraphs 16 and 17, Plaintiff did not understand the reporter to be asking him whether he would repeat his actions in the future. Plaintiff understood only that the reporter was asking him whether the reality of his 15-year prison sentence would have changed his decision to retain and disseminate the information that led to his conviction.

20.    In the remarks recited in Paragraphs 16 and 17, Plaintiff referred only to the counterfactual hypothetical world in which he could go back to the moment of his crime and, knowing that he would face a 15-year prison sentence, consider whether to change course.

21.    In the ABC Interview, Plaintiff did not disclose any national defense information.

22.    In the ABC Interview, Plaintiff did not disclose any classified information.

23.     In the ABC Interview, Plaintiff did not make any statements that would reasonably support the view that Plaintiff posed a greater national security risk than he posed prior to making the ABC Interview.

24.     The ABC Interview aired on May 22, 2025.

25.     On June 3, 2025, the Secretary of the Air Force certified that Plaintiff possessed "national defense information classified at the [Top Secret]/SCI or Secret levels" and that Plaintiff's statements on the ABC Interview showed that Plaintiff "poses a danger of disclosing such information" because Plaintiff stated "that he would make the disclosures again."

26.     The assertion of the Secretary of the Air Force that Plaintiff stated "that he would make the disclosures again" was false.

27.     On July 23, 2025, the Attorney General of the United States sent a memorandum to the Director of the Federal Bureau of Prisons requesting the origination of Special Administrative Measures (SAMs) upon plaintiff pursuant to 28 C.F.R. § 501.2 (the "SAMs Memo").

28.     The SAMs Memo expressly relied on the assertion of the Secretary of the Air Force certifying that Plaintiff stated "that he would make the disclosures again" as well as the Memo's own assertion that Plaintiff made "statements that he would disclose such information again if given the opportunity." Based on those assertions, the Attorney General directed implementation of the SAMs "to restrict Teixeira's access to the mail, the media, the telephone, other inmates, and visitors," for a period of at least one year.

29.     The SAMs remain in effect and have restricted Plaintiff's outgoing mail such that his family has received only a small fraction of the letters that Plaintiff sends. For instance, Plaintiff's mother did not receive any letters between December 23, 2025, and April 14, 2026, despite Plaintiff's regular habit of sending letters. Plaintiff's incoming mail is also delayed by

weeks, and Plaintiff's phone calls with his immediate family and even his attorney have been restricted in order to comply with the SAMs.

30.    Although the SAMs contemplate that Plaintiff would receive "a minimum of one [telephone] call per month" with immediate family members, there have been months during which this has not been afforded. One reason for this is that the SAMs require contemporaneous monitoring of all phone calls by the FBI.

31.    Following the imposition of the SAMs, on August 7, 2025, Plaintiff was relocated to USP Big Sandy, a high-security penitentiary, where he was housed in the Special Housing Unit (the "SHU").

32.    In November 2025, the BOP held a hearing on whether to transfer Plaintiff to ADX Florence. The notice of hearing that was provided to Plaintiff stated that Plaintiff "does not have any incident reports," referring to disciplinary violations. The notice of hearing further stated, falsely, that on the ABC Interview, "Teixeira also stated he would do it all again."

33.    The result of the November 2025 hearing was to transfer Plaintiff to ADX Florence, where he currently resides.

34.    Despite Plaintiff's request for visitation with his immediate family, Plaintiff has had no visits since the imposition of the SAMs. As of December 1, 2025, when Plaintiff's family inquired about visiting, the BOP represented that Plaintiff "had no approved visitors."

35.    Plaintiff desires the level of access to legal and non-legal communications and visitation that a federal inmate in his position and with his security classification would ordinarily receive but for the imposition of the SAMs.

36.    Plaintiff does not have any intent to disclose national defense information or classified information now or at any time in the future.

37.    Plaintiff does not pose a danger of disclosing national defense information or classified information.

38.    There is no reasonable necessity to take steps to reduce Plaintiff's risk of disclosing national defense information or classified information.

39.    Despite the facts recited in Paragraphs 36-38, the SAMs Memo states that the SAMs, "especially as they relate to attorney-client privileged communications and contact with family and other inmates, are reasonably necessary to prevent the inmate from revealing classified information," and that the SAMs "are the least restrictive that can be tolerated in light of the ability of this inmate to divulge such classified information."

40.    Although Plaintiff has never used a prison phone to share sensitive information, the SAMs memo states, "With respect to telephone privileges, the SAM are reasonably necessary because of the high probability of calls to others in which classified information may be disclosed."

41.    Although Plaintiff has never used the prison mails to share sensitive information, the SAMs memo states, "With respect to mail privileges, the SAM are reasonably necessary to prevent the inmate from receiving or transmitting classified information. Accordingly, I have weighed the inmate's interest in the timely receipt and/or submission of mail, with the possible danger the contents of the mail may pose to national security. I have determined that delaying mail delivery to allow authorized personnel to examine a copy of the mail is the least restrictive means available to ensure that the mail is not being used to communicate any classified information."

42.    BOP has not imposed the SAMs as a disciplinary measure. Rather, BOP has imposed the SAMs only because of the direction of the Attorney General.

43.    Notwithstanding his disagreement with the imposition of the SAMs, Plaintiff has at all times complied with them.

7

***Plaintiff Has Exhausted the Administrative Remedy Process***

44.     On October 6, 2025, Plaintiff submitted a BP-8, the first step in the administrative remedy process, challenging the imposition of the SAMs. On October 7, 2025, the request was denied by the Unit Manager at USP Big Sandy.

45.     On October 8, 2025, Plaintiff submitted a BP-9, which was accepted for filing on October 15, 2025. On October 16, 2025, the BP-9 was rejected with instructions to file the request directly to the regional office.

46.     On October 17, 2025, Plaintiff submitted a BP-10, the regional administrative remedy appeal, challenging the imposition of the SAMs. Plaintiff explained, "First, the SAMs wrongly state that I present a risk of disclosing National Defense Information. There is no risk that I would do so, nor did I communicate such a risk during my May 20th, 2025 interview. There is no legitimate basis for the SAMs. Second, I did not disclose classified information during the May 20th interview. Third, the SAMs violate my First Amendment free speech rights because they are being imposed based on the content of my speech in the May 20th interview."

47.     Due to a prison staff error in transmitting the BP-10 to the wrong address, Plaintiff had to resubmit the BP-10, which was ultimately accepted for filing on November 24, 2025, under Remedy ID 1257618-R1. The Mid-Atlantic Regional Office notified Plaintiff of its extension of its response deadline through January 23, 2026.

48.     No response was provided to Plaintiff by January 23, 2026. Plaintiff thus followed BOP Program Statement 1330.18 in treating the BP-10 as denied. On January 26, 2026, Plaintiff submitted a BP-11, the central office administrative remedy appeal.

49.     Due to the illegibility of the bottom layer of the multi-layer carbon copy form on which a BP-11 must be submitted, Plaintiff's initial BP-11 submission was returned unfiled.

Plaintiff did not receive that returned filing until March 25, 2026 (after he had been transferred to ADX Florence). Plaintiff acquired a new BP-11 and transmitted a substitute.

50.    Plaintiff's attorney emailed the BOP's Central Office and General Counsel on April 29, 2026, to inquire as to the status of the BP-11, attaching a properly signed "Release of Information Consent" form. No response was given, and Plaintiff has not received any determination on his BP-11. Plaintiff has thus fully exhausted the administrative remedy process.

## V.    Causes of Action

### COUNT I
### ADMINISTRATIVE PROCEDURE ACT (5 U.S.C. § 702)

51.    Plaintiff incorporates herein all of the preceding paragraphs of this Complaint.

52.    Pursuant to the Administrative Procedure Act ("APA"), this Court has the power of judicial review of an agency action. *See* 5 U.S.C. §§ 551, 702.

53.    BOP's prison-placement determination is not subject to review under the APA. *See* 18 U.S.C. § 3625. But the imposition of SAMs is agency action that is fully subject to judicial review, so long as the inmate first seeks review through the administrative remedy process, which Plaintiff has done. *See* 28 C.F.R. § 501.2(d).

54.    The SAMs unlawfully and unreasonably restrict Plaintiff's liberty, namely his movement, written communication, telephone communication, and access to legal assistance.

55.    The imposition of the SAMs was arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, without observance of procedure required by law, unsupported by substantial evidence, and unwarranted by the facts.

56.    The imposition of the SAMs was not based on upon the required written certification to the Attorney General by the head of a member agency of the United States intelligence community.

9

57.     Neither the Attorney General nor the BOP examined the words Plaintiff actually spoke in the ABC Interview or articulated a satisfactory explanation for the SAMs. Neither the Attorney General nor the BOP provided a rational connection between the facts that actually exist (including the facts of the actual ABC Interview) and the choice made to impose the SAMs.

58.     There is no alternative reasoned basis for the SAMs.

59.     Nothing in the statutory or regulatory regime permitting SAMs delegates Defendants the authority to subject Plaintiff to the extreme conditions of the SAMs without having a requisite factual basis, which is lacking in this case.

60.     Wherefore, based on the foregoing facts, Plaintiff respectfully requests that this Court issue a declaratory judgment holding unlawful and setting aside the imposition of the SAMs based on the July 23, 2025 SAMs Memo.

<u>**COUNT II**</u>
**U.S. CONSTITUTION, AMENDMENT I (FREE SPEECH CLAUSE)**

61.     Plaintiff incorporates herein all of the preceding paragraphs of this Complaint.

62.     No legitimate penological interest supports the imposition of the SAMs.

63.     The SAMs restrict Plaintiff's protected First Amendment speech.

64.     The SAMs were imposed in response to and in retaliation for Plaintiff's protected First Amendment speech, namely, his remarks on the ABC Interview.

65.     The SAMs were imposed to retaliate against Plaintiff for participating in an interview in which Defendants did not want Plaintiff to participate, Defendants having previously denied Plaintiff permission to participate in similar interviews.

66.     The SAMs were imposed to punish Plaintiff for participating in an interview in which Defendants did not want Plaintiff to participate, even though Plaintiff's act of participating in the ABC Interview itself was plainly insufficient grounds for imposing the SAMs.

67.     Wherefore, based on the foregoing facts, Plaintiff requests declaratory and injunctive relief against the continued imposition of the SAMs.

**COUNT III**
**U.S. CONSTITUTION, AMENDMENT V (DUE PROCESS CLAUSE)**

68.     Plaintiff incorporates herein all of the preceding paragraphs of this Complaint.

69.     Plaintiff has a protected liberty interest in avoiding atypical and significant hardships compared to the ordinary incidents of prison life.

70.     The imposition of the SAMs has resulted in deprivation of Plaintiff's protected liberty interest in avoiding atypical and significant hardships because Plaintiff has been subjected to near 24-hour-a-day solitary confinement since August 2025, with almost zero telephone or mail communication with even his immediate family.

71.     Wherefore, based on the foregoing facts, Plaintiff requests a declaratory judgment deeming the SAMs to be unlawful in violation of the Fifth Amendment Due Process Clause.

**VI.     Prayer for Relief**

For all these reasons, Plaintiff respectfully requests (1) a declaratory judgment holding the SAMs unlawful; (2) a permanent injunction prohibiting Defendants from using the ABC Interview as a basis for imposing SAMs now or at any time hereafter; (3) costs of this action; and (4) reasonable attorney's fees as authorized by any applicable statute or otherwise.

**Date**:  May 18, 2026                              Respectfully submitted,

<u>/s/   Kyle Singhal</u>
Kyle Singhal
D.C. Bar No. 1601108
*Counsel for Plaintiff*
Hopwood & Singhal PLLC
1701 Pennsylvania Ave., N.W. #200
Washington, DC 20006
(202) 769-4080
kyle@hopwoodsinghal.com

11