**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-cv-02158-CNS-MDB

JACK TEIXEIRA,

     Plaintiff,

v.

FEDERAL BUREAU OF PRISONS, and
TODD BLANCHE, in his official capacity as Attorney General of the United States,

     Defendants.

---

**MOTION TO DISMISS**

---

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Federal Bureau of Prisons (BOP) and Todd Blanche move to dismiss the Complaint. *See* ECF No. 1.[1]

Plaintiff Jack Teixeira is serving a 15-year sentence for unlawfully disclosing national security information online. *See id.*, ¶ 1. His Complaint raises three claims as to Special Administrative Measures (SAMs) that restrict his communications in BOP custody. *See id.*, ¶¶ 51-71. First, Plaintiff brings an Administrative Procedure Act (APA) claim, alleging his SAMs are arbitrary and capricious. *See id.*, ¶¶ 51-60. Second, he raises a claim of First Amendment retaliation challenging his SAMs' imposition following an interview he performed with ABC News. *See id.*, ¶¶ 61-67. Finally, he brings a Fifth Amendment claim, alleging that his SAMs violate due process. *See id.*, ¶¶68-71.

Plaintiff's Complaint should be dismissed for failure to state a claim.

*First*, Plaintiff's APA claim should be dismissed because his SAMs are not arbitrary and capricious—the Attorney General entered the SAMs after Plaintiff appeared in an ABC News interview in violation of his plea agreement and after Plaintiff stated in his interview that he would again share national security information.

*Second*, his First Amendment claim should be dismissed. In his plea agreement, Plaintiff waived his rights to the speech forming the basis of his First Amendment claim. And, in any event, no First Amendment violation has occurred here because the Attorney General had a legitimate penological basis for imposing the SAMs.

*Finally*, Plaintiff fails to state a Fifth Amendment claim. He has not shown that his SAMs impose an atypical and significant hardship establishing a due-process violation.

---

[1] Pursuant to CNS Civ. Practice Standard 7.1B(b), the parties conferred regarding this Motion, and Plaintiff opposes the relief sought in the Motion.

## BACKGROUND

### I.    Plaintiff's criminal history

Plaintiff is a former Air National Guardsman who was charged with disclosing national security information containing, among other things, details about troop movements and deliveries of battlefield supplies. *See* Exhibit 1, *United States v. Teixeira*, No. 23-cr-10159-IT (D. Mass June 15, 2023), ECF No. 48.[2] In March 2024, Plaintiff pled guilty to six counts of Willful Retention and Transmission of National Defense Information. *See* Exhibit 2, *United States v. Teixeira*, No. 23-cr-10159-IT (D. Mass Mar. 4, 2024), ECF No. 130. In his plea agreement, Plaintiff agreed that:

> [s]hould [he] at any time author or participate in the creation of any book, writing, article, film, documentary, or *other production*, or otherwise provide information for purposes of publication or dissemination, including but not limited to information provided through interviews with writers or representatives of *any media organization* or entity, [he would] *first … submit in a timely fashion such book, writing, article, film, documentary, other production, or information to the pre-publication review board for the Department of Defense ("DoD") and the FBI for timely pre-publication review* and deletion of information which, in the discretion of DoD and the FBI, should not be published or disseminated on the grounds of national security or [his] pre-existing agreements with [the National Guard].

*Id.* at 8 (emphasis added). He entered his plea agreement "freely and voluntarily." *Id.* at 11.

### II.    Plaintiff's BOP custody

In January 2025, Plaintiff was confined at FCI Petersburg, a medium-security

---

[2] The Court may "take judicial notice of facts from the record of Plaintiff's earlier criminal ... case[], as [it] bear[s] directly upon the disposition of the case at hand." *Salim v. Warden*, No. 22-cv-03374-CNS-STV, 2024 WL 1096577, at *1 n.1 (D. Colo. Jan. 25, 2024), *report and recommendation adopted*, No. 22-cv-03374-CNS-STV, 2024 WL 1094469 (D. Colo. Mar. 13, 2024).

prison. *See id.*, ¶ 12. He subsequently requested permission to participate in an ABC News interview. *See* Exhibit 3 at 3 (July 2025 SAM); Exhibit 4 at 4 (July 2026 SAM).[3] The warden at FCI Petersburg denied Plaintiff's interview request. *See id.*

Plaintiff nonetheless went forward with the ABC News interview on May 20, 2025, at FCI Petersburg (the "ABC Interview"). *See* ECF No. 1, ¶ 13. In the ABC Interview, he noted his continued knowledge of national security information: "Without going into specifics, I thought it was ... a lot about specific battles and the outcomes of those battles, or certain troop positions, and certain things on the tactical and strategic aspect of that war and other places around the world[.]" Ex. 3 at 3–4. He justified his federal offenses: "I believe that I educated a lot of the people who have been kept in the dark, and who were being lied to about this, concerning all of the things that had been going on." *Id.* at 3. When a reporter asked him if he would commit his crime "again" if he had "the chance" to do so, Plaintiff stated that he would have and further added, "I still do believe that, yes, I would have done it again." *Id.*; ECF No. 1, ¶ 17; ABC News, *Pentagon leaker Jack Teixeira speaks out from prison for the 1st time (Exclusive)*, 6:28 (YouTube, May 22, 2025), https://www.youtube.com/watch?v=gNhFzEc6fb8&t=17s.[4]

### III.   Plaintiff's special administrative measures

Following Plaintiff's ABC Interview, the BOP moved him to the U.S. Penitentiary,

---

[3] Documents outside of the complaint may be considered when they are referred to in the complaint if the documents are central to the plaintiff's claim. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *see also* ECF No. 1, ¶¶ 27-30. Plaintiff's SAMs are central to his claims as they impose the restrictions he asserts are unlawful.

[4] The Court may consider the ABC Interview itself because the Complaint references that interview. *See* ECF No. 1, ¶ 24; *see also Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1300 (10th Cir. 2025) (suggesting, by way of comparison, that a video may be considered on a motion to dismiss when it is referenced in the complaint).

Administrative Maximum, in Florence, Colorado ("ADX"). *See* ECF No. 1, ¶ 33.

The Attorney General also imposed a SAM on Plaintiff in July 2025. *See* Ex. 3. Federal regulations permit the Attorney General to impose SAMs "that are reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a). Those SAMs may include limiting certain privileges, such as "correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence." *Id.* With approval, each SAM may be imposed for up to one year, but they can be extended in one-year increments. *Id.* § 501.3(c).

In Plaintiff's July 2025 SAM, the Attorney General explained its rationale for imposing the SAM. The Attorney General stated that Plaintiff had a "history of disclosing national security information without authorization" and that "the full volume of materials that he posted is not known because [he] deleted the information." Ex. 3 at 3–4. Also, the Secretary of the Air Force certified "that the [classified national defense] information known to and disclosed by" Plaintiff would be harmful to the United States if disclosed and that Plaintiff "pose[d] a danger of disclosing" that information. *Id.* at 4. Further, "in providing the interview, portions of which were broadcast, [Plaintiff] violated the terms of the plea agreement requiring pre-publication review by the government to protect against the further unauthorized dissemination of classified information." *Id.* And Plaintiff stated, by his "own admission during the May 20, 2025 interview[,] that he would make the disclosures again." *Id.* Given those facts, the Attorney General determined that imposing Plaintiff's SAM was "reasonably necessary to prevent disclosure of classified

information, the disclosure of which would pose a threat to the national security." *Id.*

The Attorney General extended Plaintiff's SAM in July 2026 based on the same underlying facts. *See* Ex. 4. In the July 2026 SAM, the Attorney General again concluded that Plaintiff's SAM was "reasonably necessary to prevent disclosure of classified information, the disclosure of which would pose a threat to the national security of the United States." *Id.* at 5.

## ARGUMENT

### I.   Plaintiff does not plead a plausible APA claim.

Plaintiff argues that his SAMs are arbitrary and capricious in violation of the APA because the Attorney General did not "examine[] the words Plaintiff actually spoke in the ABC Interview or articulate[] a satisfactory explanation for the SAMs." ECF No. 1, ¶ 57.[5] The imposition of Plaintiff's SAMs, however, was not arbitrary and capricious— the Attorney General reviewed the ABC Interview and explained that, given Plaintiff's conduct in appearing for the interview and his statements therein, imposition of a SAM was reasonably necessary to prevent the disclosure of national security information.

Under the APA, a court may hold unlawful and set aside agency action only if it finds the agency's action to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). "[T]he scope of review under the [APA] is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

---

[5] Plaintiff also asserts that his SAMs lack a written notification "by the head of a member agency of the United State intelligence community." ECF No. 1, ¶ 56. He is wrong—the Air Force Secretary issued that notification for both SAMs. *See* Ex. 3 at 4; Ex. 4 at 4.

(1983). This "standard of review is very deferential to the agency…. A presumption of validity attaches to the agency action and the burden of proof rests with the parties who challenge such action." *Hillsdale Envtl. Loss Prevention Act v. U.S. Army Corps. of Eng'rs*, 702 F.3d 1156, 1165 (10th Cir. 2012) (cleaned up). "The court's function is exhausted where a rational basis is found for the agency action taken." *Am. Colloid Co. v. Babbitt*, 145 F.3d 1152, 1154 (10th Cir. 1998) (cleaned up).

Here, Plaintiff fails to establish that his SAMs are arbitrary and capricious because multiple rational bases support the Attorney General's action.

*First*, Plaintiff's unapproved appearance in the ABC Interview—in violation of his plea agreement—justifies the Attorney General's imposition of the SAMs. Plaintiff pled guilty to publicly disclosing national security information. *See* Ex. 2. The full extent of his disclosure is unknown because he deleted the information. Ex. 3 at 4. That criminal history shows that Plaintiff has previously been willing to unlawfully disclose national security information. To mitigate the risk of Plaintiff repeating that criminal conduct, his plea agreement required him to obtain approval before participating in any "interviews with … any media organization." Ex. 2 at 8. Before participating in the ABC interview, Plaintiff was aware of that obligation. Indeed, he sought permission to participate in the ABC Interview and was denied. *See* Ex. 3 at 3; Ex. 4 at 4. Despite that denial and in violation of his plea agreement, Plaintiff went forward with the ABC Interview anyway.

The Attorney General relied on Plaintiff's conduct violating his plea agreement in imposing the SAM, and that reliance was rational. *See* Ex. 3 at 3–4; Ex. 4 at 3–5. Plaintiff has a history of unlawful disclosure of national security information. He then, by

6

performing the ABC Interview, flouted a measure in his plea agreement designed to prevent him from again disclosing national security information. Given that conduct, the Attorney General concluded that a SAM limiting Plaintiff's communications was reasonably necessary "to prevent [his] disclosure of classified information." Ex. 3 at 4; Ex. 4 at 5. That rationale is not arbitrary or capricious—it is, at a minimum, rational. *See Salim*, 2024 WL 1096577, at *7–8 (dismissing APA claim challenge to the imposition of a SAM limiting a plaintiff's communications).

*Second*, Plaintiff's statements during his unapproved appearance at the ABC Interview further justify the SAMs. During the ABC Interview, Plaintiff demonstrated that he retained national security information: "Without going into specifics, I thought it was ...a lot about specific battles and the outcomes of those battles, or certain troop positions, and certain things on the tactical and strategic aspect of that war and other places around the world[.]" Ex. 3 at 3–4. He also justified his previous disclosure of that information: "I believe that I educated a lot of the people who have been kept in the dark, and who were being lied to about this, concerning all of the things that had been going on." *Id.* at 3. When asked if he would commit his crime "again" if he had "the chance," Plaintiff stated that would have and continued, "***I still do believe that, yes, I would have done it again***." *Id.* at 3 (emphasis added); ABC News, *Pentagon leaker Jack Teixeira speaks out from prison for the 1st time (Exclusive)*, 6:28 (YouTube, May 22, 2025), https://www.youtube.com/watch?v=gNhFzEc6fb8&t=17s.

Plaintiff contends the Attorney General was irrational in interpreting his words to mean that he may again disclose national security information. He argues that he meant

that he would commit his crimes again only *in the past* if he could but not that he would commit them again *in the future* if he could. *See* ECF No. 1, ¶¶ 18–20.

The Attorney General's interpretation of Plaintiff's statements, though, is correct and, at least, rational.

For one, Plaintiff's statements speak for themselves—when asked if he would disclose national security information again, Plaintiff stated that he would do it again if he had the chance. *See supra*. That Plaintiff remains committed to repeating his crimes again (whether in the past or the future) shows a *current willingness to disclose national security information*. While Plaintiff argues that the Attorney General should have engaged in the metaphysical exercise of parsing his words to relate to only "the counterfactual hypothetical world," ECF No. 1, ¶ 20, the Attorney General was rational in interpreting Plaintiff's words to express a continued commitment to, and belief in, his crimes to justify the need for his SAMs.

For another, the context of Plaintiff's statements is important. Plaintiff has a previous "history of disclosing national security information without authorization." Ex. 3 at 4; Ex. 4 at 5. The Attorney General interpreted Plaintiff's statements with that context. His past willingness to disclose national security information indicates the potential for future disclosure. Indeed, Plaintiff's plea agreement recognized that future risk and attempted to mitigate it. Given Plaintiff's past conduct, the Attorney General was rational to interpret Plaintiff's words to mean that he presently maintains a willingness to disclose national security information, justifying imposition of Plaintiff's SAMs.

***

At the very least, Plaintiff's conduct taken together justifies the Attorney General's imposition of his SAMs. Plaintiff has a criminal history of unlawfully disclosing national security information to the public. His plea agreement sought to prevent him from committing those crimes again by requiring him to obtain preapproval of interview appearances. Plaintiff sought preapproval for the ABC Interview and was rejected but nonetheless performed that interview in violation of his plea agreement. At the ABC Interview, Plaintiff stated he would disclose national security information "again" if he were afforded "the chance." And the government does not know the full extent of what Plaintiff could newly divulge as he deleted the information that he posted online. Based on his criminal history, his unapproved ABC Interview appearance, and his statements in that interview, the Attorney General determined that Plaintiff's SAMs were reasonably necessary to prevent future disclosures. That determination was rational given the totality of Plaintiff's conduct.

## II.    Plaintiff also does not plead a plausible First Amendment claim.

Plaintiff next contends that the imposition of his SAMs is retaliation, violating the First Amendment. *See* ECF No. 1, ¶¶ 61-67. But he has not plausibly alleged a First Amendment violation. *First*, he cannot assert a First Amendment right to his speech in the ABC Interview because he waived his right to speak to the media without permission in his plea agreement. Given that his failure to obtain that permission is the basis for his SAMs, he cannot now challenge those SAMs under the First Amendment. *Second*, even if he had a First Amendment right to his speech, the Attorney General had a legitimate penological basis for imposing the SAMs, justifying their imposition.

9

Ultimately, in Plaintiff's view, the Attorney General must wait to impose a SAM until he actually discloses national security information again, but the Attorney General need not wait that long given its present penological basis for imposing Plaintiff's SAMs.

### A. Plaintiff waived his right to speak in the ABC Interview and cannot contest his SAMs based on that speech under the First Amendment.

A criminal defendant may waive their constitutional rights in a plea agreement. *See Town of Newton v. Rumery*, 480 U.S. 386, 393 (1987) (observing that "a guilty plea waives important constitutional rights"). Those waivers may include First Amendment rights. *See Sec. & Exch. Comm'n v. Romeril*, 15 F.4th 166, 172 (2d Cir. 2021) ("In the course of resolving legal proceedings, parties can, of course, waive their rights, including such basic rights as the right to trial and the right to confront witnesses. The First Amendment is no exception…." (cleaned up)); *cf. United States v. Holzer*, 32 F.4th 875, 881–87 (10th Cir. 2022) (rejecting a First Amendment challenge to a supervised release condition based on an appellate waiver in a plaintiff's plea agreement).

Here, Plaintiff waived his First Amendment right to challenge his SAMs based on his speech in the ABC Interview. As noted, Plaintiff's plea agreement required him to obtain approval before participating in "interviews with … any media organization." Ex. 2 at 8. In doing so, Plaintiff waived his First Amendment right to any speech to news media without permission. Here, Plaintiff spoke to news media (ABC News) lacking that permission. *See id.* Under his plea agreement, Plaintiff had no right to that speech. Plaintiff's SAMs, though, are based on that speech. *See* Ex. 3; Ex. 4. As a result, Plaintiff cannot now challenge the imposition of his SAMs as he waived his First Amendment rights to the speech underlying those SAMs.

Thus, because Plaintiff lacks a First Amendment right to challenge his SAMs in this context, he has not stated a plausible First Amendment claim.

**B.     Even if he had retained a First Amendment right to his speech in the ABC Interview, Plaintiff fails to allege a First Amendment violation.**

To state a First Amendment retaliation claim, a plaintiff must show: (1) he engaged in constitutionally protected activity, (2) the defendant caused him to suffer an injury chilling a person of ordinary firmness from engaging in that activity, and (3) the defendant's action was substantially motivated as a response to the constitutionally protected activity. *See Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

As to retaliatory motive, Plaintiff is required to "allege specific facts" showing that "but for the retaliatory motive, the incidents to which he refers ... would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (cleaned up). Thus, "[t]o make a prisoner's claim of retaliation by a prison official plausible, it must be supported by (1) specific facts about the adverse action taken against the prisoner to make it plausible that the action was not motivated by legitimate grounds and (2) specific facts showing why the particular official would be motivated to improperly harm the prisoner." *Guy v. Lampert*, 748 F. App'x 178, 181 (10th Cir. 2018).

Here, Plaintiff fails to allege facts plausibly showing that his SAMs were not motivated by and reasonably related to a legitimate penological interest.

While an inmate has First Amendment rights in prison, those rights are limited. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "In the First Amendment context

11

a corollary of this principle is that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

Given those principles, a restriction on an inmate's communications is valid so long as "it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). This test is "a unitary, deferential standard for reviewing prisoners' constitutional claims." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). Under that deferential standard, an inmate must "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012) (citation omitted). The inmate must allege "facts that might well be unnecessary in other contexts" for his claim to survive a motion to dismiss. *Id.* (citation omitted). And when evaluating a penological interest, a court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

Here, Plaintiff's SAMs were reasonably related to a legitimate penological interest. As explained in Section I, the Attorney General's decision to impose Plaintiff's SAMs relates to a legitimate penological interest—"prevent[ing] disclosure of classified information, the disclosure of which would pose a threat to the national security." Ex. 3 at 4; Ex. 4 at 5. Given Plaintiff's past criminal history, his unapproved appearance at the ABC Interview, and his statements in that interview, the Attorney General had a

12

legitimate basis to restrict Plaintiff's communications via his SAMs. *See, e.g.*, *Al-Owhali*, 687 F.3d at 1240–41 (upholding dismissal of challenge to SAMs as the pleading included "no facts indicating that the government lacks a legitimate penological interest"); *Nicholson v. Brennan*, No. 15-cv-01999-KLM, 2017 WL 4337896, at *4–6 (D. Colo. Sept. 28, 2017) (dismissing First Amendment claim as the plaintiff failed to show his SAMs did not serve the legitimate governmental interest of preventing the disclosure of national security information). Because Plaintiff fails to plausibly allege that his SAMs lack a legitimate penological interest, he does not state a First Amendment claim.

## III.    Plaintiff likewise fails to plead a plausible Fifth Amendment claim.

Plaintiff finally asserts that his SAMs violate due process under the Fifth Amendment. *See* ECF No. 1, ¶¶ 68–71. Plaintiff's SAMs do not violate due process.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Not every deprivation of liberty at the hands of prison officials, however, has constitutional dimension because prisoners retain only a narrow range of protected liberty interests." *Gowadia v. Stearns*, No. 13-cv-00077-KMT, 2014 WL 959487, at *8 (D. Colo. Mar. 12, 2014) (cleaned up), *aff'd*, 596 F. App'x 667 (10th Cir. 2014). For prisoners, a liberty right exists only where an interference with that right would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995).

To determine what qualifies as an "atypical and significant hardship," the Tenth Circuit considers four nondispositive factors. *See Rezaq v. Nalley*, 677 F.3d 1001, 1012

13

(10th Cir. 2012). Those factors are whether: (1) the treatment relates to and furthers legitimate penological interests; (2) the conditions complained of are extreme; (3) the treatment increases the duration of confinement; and (4) the treatment is of indeterminate length. *See id.*

All four of the *Rezaq* factors weigh against concluding that Plaintiff has a liberty interest in avoiding the conditions imposed by his SAMs.

***First factor—Legitimate penological interests.*** "To satisfy the first factor, there need only be a reasonable relationship between the SAMs imposed and the asserted penological interests." *Nicholson*, 2017 WL 4337896, at *8 (cleaned up). And, in imposing a SAM, "[p]rison officials are permitted to consider the nature of the underlying crime for which a prisoner was convicted." *Sattar v. Holder*, No. 07-cv-02698-PAB-KLM, 2012 WL 882401, at *8 (D. Colo. Mar. 15, 2012).

Here, "[t]here is an obvious and reasonable relationship between [Plaintiff's] crimes and the measures the BOP implemented to restrict his communications." *Gowadia v. Stearns*, 596 F. App'x 667, 673 (10th Cir. 2014). Plaintiff was convicted of divulging national security information. Given that criminal history, "the restrictions on Plaintiff's communications relate directly to the prevention of threats to national security." *Nicholson*, 2017 WL 4337896, at *8. Plaintiff's unauthorized interview appearance in violation of his plea agreement and his statements expressing a willingness to again disclose national security information further establish a reasonable relationship between Plaintiff's SAMs and the government's interest in preventing future disclosure. *See Sattar*, 2012 WL 882401, at *8 (finding that a penological interest in a

14

SAM existed to "prevent[] … communications that could threaten national security").

**Second factor—Conditions of placement.** The conditions imposed at the ADX are not extreme. *See Rezaq*, 677 F.3d at 1014–15 (concluding that the conditions at the ADX are not "extreme"). While Plaintiff asserts the conditions of the SAMs are extreme, ECF No. 1, ¶ 59, he does not explain why. *See Salim v. Sessions*, No. 13-cv-03175-RM-CBS, 2017 WL 11487131, at *7 (D. Colo. May 2, 2017) ("[T]here is no allegation which supports the notion that the SAMs are extreme."). In any event, the imposition of Plaintiff's SAMs is not extreme. *See, e.g.*, *Gowadia*, 596 F. App'x at 673 (finding that SAMs at ADX "do not, standing alone, amount to extreme conditions").

**Third factor—Duration of confinement.** Plaintiff does not allege that his SAMs increase the duration of his confinement. *See* ECF No. 1. Simply put, "[t]he SAMs have no impact on the duration of Plaintiff's incarceration." *Salim*, 2017 WL 11487131, at *7.

**Fourth factor—Indeterminate length.** A SAM cannot be entered for an indeterminate duration; it may only be entered "in increments not to exceed one year." 28 C.F.R. § 501.3(c). Plaintiff's SAMs expressly state that they are only effective for one year. *See* Ex. 3 at 4; Ex. 4 at 5. In short, "the SAMs are not indefinite but must be renewed every year." *Salim*, 2017 WL 11487131, at *7.

***

In sum, Plaintiff fails to plead a Fifth Amendment claim as "all four [*Rezaq*] factors weigh against finding that Plaintiff has a liberty interest in avoiding the conditions imposed by [his] SAMs." *Nicholson*, 2017 WL 4337896, at *9.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Complaint should be dismissed.

15

Dated: August 10, 2026.

Respectfully submitted,

PETER MCNEILLY
United States Attorney

s/ Nicholas A. Deuschle
**Nicholas A. Deuschle**
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0411
Email: nick.deuschle@usdoj.gov

Attorney for Defendants

16

## CERTIFICATE OF SERVICE

I hereby certify that, on August 10, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/ Nicholas A. Deuschle
**Nicholas A. Deuschle**
United States Attorney's Office