**EXHIBIT 3**

**JULY 2025 SAM**



**Office of the Attorney General**

**Washington, D. C. 20530**

July 23, 2025

LIMITED OFFICIAL USE

MEMORANDUM FOR:   WILLIAM K. MARSHALL III
                  DIRECTOR
                  FEDERAL BUREAU OF PRISONS

FROM:             THE ATTORNEY GENERAL

SUBJECT:          Origination of Special Administrative Measures, Pursuant to
                  28 C.F.R. § 501.2, for Federal Bureau of Prisons Inmate
                  Jack Teixeira

On March 4, 2024, Federal Bureau of Prisons (BOP) inmate Jack Teixeira (Teixeira) pleaded guilty in the District of Massachusetts to six counts of willful retention and transmission of classified information relating to the national defense in violation of 18 U.S.C. § 793(e). On November 12, 2024, he was sentenced to 15 years in prison to be followed by three years of supervised release. He is currently housed by the BOP at the Federal Correctional Institution Medium in Petersburg, Virginia (FCI Petersburg).

The United States Attorney for the District of Massachusetts (USA/DMA) requests that the Attorney General impose Special Administrative Measures (SAM) on Teixeira. The United States Air Force (USAF), the Federal Bureau of Investigation (FBI), and the Counterintelligence and Export Control Section of the National Security Division (NSD/CES) concur in the USA/DMA's request to impose SAM. Pursuant to 28 C.F.R. § 501.2, SAM are reasonably necessary to prevent disclosure of classified information and the Secretary of the USAF, as the head of a member agency of the United States intelligence community, has certified that disclosure of such information would pose a threat to the national security and that there is a danger that the inmate will disclose such information.

In September 2019, Teixeira enlisted in the United States Air National Guard (USANG) and served as a Cyber Defense Operations Journeyman with the 102nd Intelligence Wing at Otis USANG Base in Sandwich, Massachusetts. In that role, Teixeira was granted a Top Secret/Sensitive Compartmentalized Information (TS/SCI) security clearance and assigned to a technology support role. Due to the sensitive nature of the information and technological systems to which he had access, Teixeira signed non-disclosure agreements and received training as to his responsibilities to safeguard classified information. Beginning in January

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                      P a g e | **2**

2022, Teixeira began to unlawfully retain classified national defense information, which he shared on Discord, a social media platform, for access by others who were not authorized to receive such information. Specifically, Teixeira printed and photographed classified materials that he then posted online via Discord. Other Discord users provided investigators with copies of most of the materials Teixeira posted. However, the full volume of materials that he posted is not known because Teixeira deleted the information from the servers on which he saved the materials. Through his actions, Teixeira demonstrated that he not only has familiarity with classified systems, but that he also has knowledge of how to illegally obtain, remove, and disseminate classified information from such systems without detection.

Prior to pleading guilty, Teixeira signed a plea agreement with the USAO/DMA. That agreement, in pertinent part, included the following clause:

*Should Defendant at any time author or participate in the creation of any book, writing, article, film, documentary, or other production, or otherwise provide information for purposes of publication or dissemination, including but not limited to information provided through interviews with writers or representatives of any media organization or entity, Defendant hereby agrees first to submit in a timely fashion such book, writing, article, film, documentary, other production, or information to the pre-publication review board for the Department of Defense ("DoD") and the FBI for timely pre-publication review and deletion of information which, in the discretion of DoD and the FBI, should not be published or disseminated on the grounds of national security or the defendant's pre-existing agreements with the USANG.*

Teixeira subsequently sought to provide an interview to a reporter from ABC News. His request was denied, the FCI Petersburg warden verbally notified Teixeira of the denial, and a copy of the written denial was placed in his central file. However, on May 20, 2025, Teixeira used a prison phone at FCI Petersburg to speak with an ABC News reporter. The interview was recorded and excerpts were broadcast on ABC on May 22, 2025. That report was made accessible for on-demand viewing via ABC News online. During the interview, Teixeira stated that he did not think he did anything wrong ("My intent was to educate the United States populous, the people, about what was going on. It was not to harm the United States as a country because I love my nation. I'm a patriot."). Teixeira also stated that he would take the same actions again if given the opportunity ("I still do believe that, yes, I would have done it again."). Teixeira told the reporter that he thought the national defense information he disclosed was important for people to know ("I believe that I educated a lot of the people who have been kept in the dark, and who were being lied to about this, concerning all of the things that had been going on"), and explained that at least some of the information he accessed and

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                    P a g e | **3**

disclosed had to do with military actions and outcomes, as well as tactical and strategic data ("Without going into specifics, I thought it was …a lot about specific battles and the outcomes of those battles, or certain troop positions, and certain things on the tactical and strategic aspect of that war and other places around the world[.]").  These statements indicate that, in addition to his knowledge of the sensitive technological systems on which he worked, he also retained knowledge of specific classified information that was contained on those systems. Furthermore, in providing the interview, portions of which were broadcast, Teixeira violated the terms of the plea agreement requiring pre-publication review by the government to protect against the further unauthorized dissemination of classified information.

The Secretary of the Air Force certified on June 3, 2025, that the information known to and disclosed by Teixeira includes national defense information classified at the TS/SCI or Secret levels, that the disclosure of such information would be harmful to the national security of the United States and that, by Teixeira's own admission during the May 20, 2025 interview that he would make the disclosures again, he poses a danger of disclosing such information.

Based upon information provided to me regarding Teixeira's history of disclosing national security information without authorization and his statements that he would disclose such information again if given the opportunity, I find that SAM are reasonably necessary to prevent disclosure of classified information, the disclosure of which would pose a threat to the national security.  Therefore, I am directing that you, pursuant to 28 C.F.R. § 501.2, implement SAM to restrict Teixeira's access to the mail, the media, the telephone, other inmates, and visitors.  Implementation of the SAM will commence immediately upon notice to the inmate, and the SAM will be in effect for one year from the date of my approval, subject to my further direction or the direction of a designated delegee.

1.    **General Provisions**

    a.    **Adherence to Usual United States Marshals Service (USMS), BOP, and Detention Facility (DF) Policy Requirements** - In addition to the below-listed SAM, the inmate must comply with all usual USMS, BOP, and non-BOP DF policies regarding restrictions, activities, privileges, communications, etc.  If there is a conflict between USMS/BOP/DF policies and the SAM, as set forth herein, where the SAM are more restrictive than usual USMS/BOP/DF policies, then the SAM shall control.  If usual USMS/BOP/DF policies are more restrictive than the SAM, then USMS/BOP/DF policies shall control.

    b.    **Interim SAM Modification Authority** - During the term of this directive, the Director, Office of Enforcement Operations (OEO), Criminal Division, may modify the inmate's SAM as long as any SAM modification authorized by OEO:

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                      P a g e | **4**

    i.  Does not create a more restrictive SAM;

    ii.  Is not in conflict with the request of the USA/DMA, FBI, or
       USMS/BOP/DF, or applicable regulations; and

    iii.  Is not objected to by the USA/DMA, FBI, or USMS/BOP/DF.

  c.  **Inmate Communications Prohibitions** - The inmate is limited, within the
    USMS/BOP/DF's reasonable efforts and existing confinement conditions, from
    having contact (including passing or receiving any oral, written, or recorded
    communications) with any other inmate, visitor, attorney, or anyone else, except
    as outlined and allowed by this document, that could reasonably foreseeably result
    in the inmate communicating (sending or receiving) information that could
    circumvent the SAM's intent of significantly limiting the inmate's ability to
    communicate (send or receive) classified information.

2. **Attorney-Client Provisions**

  a.  **Attorney[1] Affirmation of Receipt of the SAM Restrictions Document** - The
    inmate's attorney (or counsel) -- individually by each if more than one -- must
    sign an affirmation acknowledging receipt of the SAM restrictions document. By
    signing the affirmation, the attorney acknowledges his or her awareness and
    understanding of the SAM provisions and his or her agreement to abide by these
    provisions, particularly those that relate to contact between the inmate and his
    attorney and the attorney's staff. The signing of the affirmation does not serve as
    an endorsement of the SAM or the conditions of confinement, and does not serve
    to attest to any of the factors set forth in the conclusions supporting the SAM.
    However, in signing the affirmation, the inmate's attorney and precleared staff[2]

---

[1] The term "attorney" refers to the inmate's attorney of record, who has been verified and
documented by the USA/DMA and who has received and acknowledged receipt of the SAM
restrictions document. As used in this document, "attorney" also refers to more than one
attorney where the inmate is represented by two or more attorneys, and the provisions of this
document shall be fully applicable to each such attorney in his or her individual capacity.

[2] "Precleared," when used with regard to an attorney's staff, or "precleared staff
member," refers to a co-counsel, paralegal, or investigator who is actively assisting the inmate's
attorney with the inmate's post-sentencing proceedings, who has submitted to a background
check by FBI and USA/DMA, who has successfully been cleared by FBI and USA/DMA, and
who has received a copy of the inmate's SAM and has agreed -- as evidenced by his or her
signature -- to adhere to the SAM restrictions and requirements. As used in this document, "staff

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                        P a g e | 5

acknowledge the restriction that they will not forward third-party messages to or from the inmate.

    i.       The USA/DMA shall present, or forward, the attorney affirmation of receipt of the SAM restrictions document to the inmate's attorney.

    ii.      After initiation of the SAM and prior to the inmate's attorney being permitted to have attorney-client privileged contact with the inmate, the inmate's attorney shall execute a document affirming receipt of the SAM restrictions document and return the original to the USA/DMA.

    iii.    The USA/DMA shall maintain the original of the SAM acknowledgment document and forward a copy of the signed document to OEO in Washington, D.C., and the USMS/BOP/DF.

b.    **Attorney-Client Privileged Visits** - Attorney-client privileged visits may be contact or non-contact, at the discretion of the USMS/BOP/DF.

c.    **Attorney May Disseminate Inmate Conversations** - The inmate's attorney may disseminate the contents of the inmate's communication to third parties for the sole purpose of providing necessary legal services related to the inmate's post-sentencing proceedings  -- and not for any other reason -- on the understanding that any such dissemination shall be made solely by the inmate's attorney, and not by the attorney's staff.

d.    **Unaccompanied Attorney's Precleared Paralegal(s) May Meet With Client** - The inmate's attorney's precleared paralegal(s) may meet with the inmate without the need for the inmate's attorney to be present.  These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.

e.    **Simultaneous Multiple Legal Visitors** - The inmate may have multiple legal visitors provided that at least one of the multiple legal visitors is the inmate's attorney or precleared paralegal.  These meetings may be contact or non-contact, at the discretion of the USMS/BOP/DF.  An investigator or interpreter/translator may not meet alone with the inmate.

---

member" also refers to more than one staff member, and the provisions of this document shall be fully applicable to each such staff member in his or her individual capacity.  A "paralegal" will also be governed by any additional DF rules and regulations concerning paralegals.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                    P a g e | **6**

    f.    **Legally Privileged Telephone Calls -** The following rules refer to all legally privileged telephone calls or communications:

        i.    **Inmate's Attorney's Precleared Staff May Participate in Inmate Telephone Calls -** The inmate's attorney's precleared staff are permitted to communicate directly with the inmate by telephone, provided that the inmate's attorney is physically present and participating in the legal call, as well.

        ii.    **Inmate's Initiation of Legally Privileged Telephone Calls -** Inmate-initiated telephone communications with his attorney or precleared staff are to be placed by a USMS/BOP/DF staff member and the telephone handed over to the inmate only after the USMS/BOP/DF staff member confirms that the person on the other end of the line is the inmate's attorney. This privilege is contingent upon the following additional restrictions:

            (1)    The inmate's attorney will not allow any non-precleared person to communicate with the inmate, or to take part in and/or listen to or overhear any communications with the inmate.

            (2)    The inmate's attorney must instruct his or her staff that:

                (a)    The inmate's attorney and precleared staff are the only persons allowed to engage in communications with the inmate.

                (b)    The attorney's staff (including the attorney) are not to patch through, forward, transmit, or send the inmate's calls, or any other communications, to third parties.

            (3)    No telephone call/communication, or portion thereof, except as specifically authorized by this document:

                (a)    Is to be overheard by a third party.[3]

---

[3] For purposes of the SAM, "third party" does not include officials of the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities when acting in connection with their official duties. This section does not allow monitoring of attorney-client privileged communications.

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                                    P a g e | 7

      (b)      Will be patched through, or in any manner forwarded or transmitted, to a third party.

      (c)      Shall be divulged in any manner to a third party, except as otherwise provided in Section 2.d. above.

      (d)      Shall be in any manner recorded or preserved.[4] The inmate's attorney may make written notes of attorney-client privileged communications.

      (4)      If the USMS/BOP/DF, FBI, or USA/DMA determines that the inmate has used or is using the opportunity to make a legal call to speak with another inmate or for any other non-legal reason that would circumvent the intent of the SAM, the inmate's ability to contact his attorney by telephone may be suspended or eliminated.

g.      **Documents Provided by Attorney to Inmate** - During a visit, the inmate's attorney may provide the inmate with, or review with the inmate, documents related to his post-sentencing proceedings, and/or material prepared by the inmate's attorney related to such proceedings, so long as any of the foregoing documents are translated, if translation is necessary, by a precleared interpreter/translator. Any documents not related to the inmate's post-sentencing proceedings must be sent to the inmate via general correspondence and will be subject to the mail provisions of subparagraphs 2.h. and 3.g. Documents previously reviewed and cleared for receipt by the inmate, and already in the inmate's possession at the outset of the visit, may be discussed or reviewed by the inmate and the inmate's attorney during the visit.

      i.      None of the materials provided may include inflammatory materials, materials inciting violence, military training materials, materials relating to the dissemination of classified information, or materials that may be used to pass messages from inmate to inmate, unless such materials have been precleared by the USA/DMA and FBI.

      ii.      The USA/DMA may authorize additional documents to be presented to the inmate. If any document not listed or described above needs to be transmitted to the inmate, consent for the transmission of the document

---

[4] Except by the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities. This section does not allow monitoring of attorney-client privileged communications.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                            P a g e | **8**

may be obtained from the USA/DMA without the need to formally seek approval for an amendment to the SAM.

h.    **Legal Mail[5]** - The inmate's attorney may not send, communicate, distribute, or divulge the inmate's mail (legal or otherwise), or any portion of its contents, to third parties, except when disclosure of the contents is necessary for the sole purpose of providing necessary legal services related to the inmate's post-sentencing proceedings and not for any other reason.

In signing the SAM acknowledgment document, the inmate's attorney and precleared staff will acknowledge the restriction that only inmate case-related documents will be presented to the inmate, and that the attorney and his or her staff are strictly prohibited from forwarding third-party mail to or from the inmate.

3.    **Inmate's Non-legal Contacts**

a.    **Non-legally Privileged Telephone Contacts -**

i.    The inmate is only authorized to have non-legally privileged telephone calls with his immediate family members.[6]

ii.   The quantity and duration of the inmate's non-legally privileged telephone calls with his immediate family members shall be set by the USMS/BOP/DF, with a minimum of one call per month.

b.    **Rules for Telephone Calls -** For all non-legally privileged telephone calls or communications, no telephone call/communication, or portion thereof:

i.    Is to be overheard by a third party.

---

[5] "Legal mail" is defined as properly marked correspondence (marked "Legal Mail") addressed to or from the inmate's attorney. All other mail, including that otherwise defined by the USMS/BOP/DF as Special Mail, shall be processed as "non-legal mail."

[6] The inmate's "immediate family members" are defined as the inmate's (USMS/BOP/DF- or FBI-verifiable) spouse, children, parents, and siblings. Requests for additional non-legal contacts may be submitted and will be considered on a case-by-case basis.

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                    P a g e | **9**

    ii.     Is to be patched through, or in any manner forwarded or transmitted, to a third party.

    iii.    Shall be divulged in any manner to a third party.

    iv.    Shall be in any manner recorded or preserved.[7]

All telephone calls shall be in English unless a fluent USMS/BOP/DF or FBI approved interpreter/translator is available to contemporaneously monitor the telephone call. Arranging for an interpreter/translator may require at least fourteen (14) days' advance notice.

c.    **Telephone SAM Restriction Notifications** - For all non-legally privileged telephone calls to the inmate's immediate family member(s):

    i.     The USMS/BOP/DF shall inform the inmate of the telephone SAM restrictions prior to each telephone call.

    ii.    The USMS/BOP/DF shall verbally inform the inmate's immediate family member(s) on the opposite end of the inmate's telephone communication of the SAM restrictions. The USMS/BOP/DF is only required to notify the inmate's communication recipient in English.

    iii.    The USMS/BOP/DF shall document each such telephone notification.

d.    **Family Call Monitoring** - All calls with the inmate's immediate family member(s) shall be:

    i.     Contemporaneously monitored by FBI.

    ii.    Contemporaneously recorded (as directed by FBI) in a manner that allows such telephone calls to be analyzed for indications the call is being used to pass messages regarding classified information, soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

    iii.    A copy of each telephone call recording involving an inmate/immediate family member shall be provided by the USMS/BOP/DF to FBI. These

---

[7] Except by the USMS/BOP/DF, FBI, DOJ, or other duly authorized federal authorities.

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                          P a g e | 10

recordings shall be forwarded on a call-by-call basis as soon as practicable.

e.    **Improper Communications** - If telephone call monitoring or analysis reveals that any call or portion of a call involving the inmate contains any indication of a discussion of illegal activity, the soliciting of or encouraging of acts of the disclosure of classified information, or actual or attempted circumvention of the SAM, the inmate shall not be permitted any further calls to his immediate family members for a period of time to be determined by the USMS/BOP/DF. If contemporaneous monitoring reveals such inappropriate activity, the telephone call may be immediately terminated.

f.    **Non-legal Visits -**

i.    **Limited Visitors** - The inmate shall be permitted to visit only with his immediate family members. The visitor's identity and family member relationship to the inmate will be confirmed by the USMS/BOP/DF and FBI in advance.

ii.   **English Requirement -** All communications during non-legal inmate visits will be in English unless a fluent USMS/BOP/DF or FBI approved interpreter/translator is readily available to contemporaneously monitor the communication/visit. Arranging for an interpreter/translator may require at least fourteen (14) days' advance notice.

iii.  **Visit Criteria** - All non-legal visits shall be:

(1)   Contemporaneously monitored by the USMS/BOP/DF and/or FBI in a manner that allows such visits to be analyzed for indications the visit is being used to pass messages soliciting or encouraging acts of violence or other crimes, or to otherwise attempt to circumvent the SAM.

(2)   Permitted only with a minimum of fourteen (14) calendar days' advance written notice to the USMS/BOP/DF facility where the inmate is housed.

(3)   Without any physical contact. All such meetings shall be non-contact to protect against harm to visitors or staff.

LIMITED OFFICIAL USE

SPECIAL ADMINISTRATIVE MEASURES (SAM)
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                        P a g e | 11

(4)    Limited to one adult visitor at a time.

g.    **Non-legal Mail** - Non-legal mail is any mail not clearly and properly addressed to/from the inmate's attorney and marked "Legal Mail" (incoming or outgoing). In addition to non-legal mail from the inmate's attorney, as discussed in subparagraph 2.h. above, non-legal mail is only authorized with the inmate's immediate family, U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, or other federal law enforcement entities.

i.    **General correspondence with limitations** - Correspondence is only authorized with immediate family members. The volume and frequency of outgoing general correspondence with immediate family members may be limited to three pieces of paper (not larger than 8 ½" x 11"), double-sided, once per calendar week to a single recipient, at the discretion of the USMS/BOP/DF. The identity and family member relationship to the inmate will be confirmed by the USMS/BOP/DF, and FBI.

ii.    **General correspondence without limitations** - There is no volume or frequency limitation on correspondence to/from U.S. courts, federal judges, U.S. Attorneys' Offices, members of U.S. Congress, the BOP, and other federal law enforcement entities, unless there is evidence of abuse of these privileges, threatening correspondence is detected, circumvention of the SAM is detected, or the quantity to be processed becomes unreasonable to the extent that efficient processing to protect the security, good order, or discipline of the institution, the public, or national security may be jeopardized.

iii.    All non-legal mail shall be -

(1)    **Copied** - Shall be copied (including the surface of the envelope) by the warden, or his or her designee, of the facility in which the inmate is housed.

(2)    **Forwarded** - Shall be forwarded, in copy form, to the location designated by FBI.

(3)    **Analyzed** - After government analysis and approval, if appropriate, the inmate's incoming/outgoing non-legal mail shall be forwarded to the USMS/BOP/DF for delivery to the inmate (incoming), or directly to the addressee (outgoing).

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                    P a g e | **12**

    iv.    The federal government shall forward the inmate's non-legal mail to the USMS/BOP/DF for delivery to the inmate or directly to the addressee after a review and analysis period of:

        (1)    A reasonable time not to exceed fourteen (14) business days for mail that is written entirely in the English language.

        (2)    A reasonable time not to exceed sixty (60) business days for any mail that includes writing in any language other than English, to allow for translation.

        (3)    A reasonable time not to exceed sixty (60) business days for any mail where the federal government has reasonable suspicion to believe that a code was used, to allow for decoding.

    v.    **Mail Seizure -** If outgoing/incoming mail is determined by the USMS/BOP/DF or FBI to contain overt or covert discussions of or requests for illegal activities, the soliciting or encouraging the dissemination of classified information, or actual or attempted circumvention of the SAM, the mail shall not be delivered/forwarded to the intended recipient but referred to FBI for appropriate action. The inmate shall be notified in writing of the seizure of any mail.

**4.**    **Communication With News Media**

The inmate shall not be permitted to speak, meet, correspond, or otherwise communicate with any member or representative of the news media in person; by telephone; by furnishing a recorded message; through the mail, his attorney, or a third party; or otherwise.

**5.**    **Religious Visitation**

If a USMS/BOP/DF and/or FBI approved religious representative is to be present for prayer with the inmate, the prayer shall be conducted as part of a contact or non-contact visit, at the discretion of the USMS/BOP/DF.

**6.**    **No Communal Cells and No Communication Between Cells**

    a.    The inmate shall not be allowed to share a cell with another inmate.

<u>LIMITED OFFICIAL USE</u>

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                             P a g e | **13**

    b.    The inmate shall be limited within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate by making statements audible to other inmates or by sending notes to other inmates.

7.    **Cellblock Procedures**

    a.    The inmate shall be kept separated from other inmates as much as possible while in the cellblock area.

    b.    The inmate shall be limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from communicating with any other inmate while in the cellblock area.

8.    **Access to Mass Communications**

To prevent the inmate from receiving and acting upon critically timed information or information coded in a potentially undetectable manner, the inmate's access to materials of mass communication is restricted as follows:

    a.    **Publications/Newspapers -**

        i.    The inmate may have access to publications determined not to facilitate criminal activity or be detrimental to national security; the security, good order, or discipline of the institution; or the protection of the public. This determination is to be made by the USMS/BOP/DF, in consultation with the USA/DMA. The inmate may correspond with the publishing company regarding technical aspects of the publication, i.e., availability of particular volumes, billing questions, etc. The review of this correspondence will be in accordance with section 8(a)(iii), below.

        ii.    Sections of any publication/newspaper that offer a forum for information to be passed by unknown and/or unverified individuals, including but not limited to classified advertisements and letters to the editor, should be removed from the publications/newspapers prior to distribution to the inmate.

        iii.    If restricted by the USMS/BOP/DF rules, access to a publication will be denied. If acceptable, upon delivery, the USMS/BOP/DF will review the publication and make the initial determination. If FBI's expertise is required, the publication will be forwarded to FBI for review. The

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                                    P a g e | **14**

USMS/BOP/DF will also forward the publication to FBI if translations are needed to make that determination. (In these cases, the agency – FBI – shall respond to the USMS/BOP/DF within fourteen (14) business days.) The inmate shall then have access to the remaining portions of the publications/newspapers deemed acceptable, in accordance with USMS/BOP/DF policy.

iv.   In order to avoid passing messages/information from inmate to inmate, the inmate shall not be allowed to share the publication(s) with any other inmates.

b.   **Television and Radio** - The inmate is authorized to have television and radio viewing and listening privileges, in accordance with standard and applicable USMS/BOP/DF policies and procedures.

c.   **Termination or Limitation** - If the USMS/BOP/DF determines that mass communications are being used as a vehicle to send messages to the inmate relating to the furtherance of criminal activities, the inmate's access may be limited or terminated for a period of time to be determined by the USMS/BOP/DF.

9.   **Access to Books**

The inmate may have access to all books that do not facilitate criminal activity or present a substantial threat to national security or the security, discipline, or good order of the institution. This initial determination is to be made by the USMS/BOP/DF and, if the USMS/BOP/DF determines that FBI's expertise is required, the book(s) will be forwarded to FBI for review. In conducting its analysis, the reviewing agency will determine whether the book advocates or promotes acts of terrorism or violence and/or whether access to the book by this particular inmate would pose a substantial threat to national security.

In order to avoid passing messages/information from inmate to inmate, the inmate shall not be allowed to share books with any other inmates.

10.   **Transfer of Custody**

In the event that the inmate is transferred to or from the custody of the USMS, BOP, or any other DF, the SAM provisions authorized for this inmate shall continue in effect, without need for any additional DOJ authorization.

LIMITED OFFICIAL USE

**SPECIAL ADMINISTRATIVE MEASURES (SAM)**
Pursuant to 28 C.F.R. § 501.2
Inmate – Teixeira                                              P a g e | **15**

## CONCLUSION

The SAM set forth herein, especially as they relate to attorney-client privileged communications and contact with family and other inmates, are reasonably necessary to prevent the inmate from revealing classified information. Moreover, these measures are the least restrictive that can be tolerated in light of the ability of this inmate to divulge such classified information.

With respect to telephone privileges, the SAM are reasonably necessary because of the high probability of calls to others in which classified information may be disclosed.

With respect to mail privileges, the SAM are reasonably necessary to prevent the inmate from receiving or transmitting classified information. Accordingly, I have weighed the inmate's interest in the timely receipt and/or submission of mail, with the possible danger the contents of the mail may pose to national security. I have determined that delaying mail delivery to allow authorized personnel to examine a copy of the mail is the least restrictive means available to ensure that the mail is not being used to communicate any classified information.

The SAM's prohibition of contact with the media is reasonably necessary. Communication with the media could pose a substantial risk of disclosure of classified information. Based upon the inmate's past behavior, I believe that it would be unwise to wait until after the inmate attempts to disclose classified information to justify such media restrictions.

The SAM's limitations on access to mass communications are reasonably necessary to prevent the inmate from receiving and transmitting classified information or information coded in a potentially undetectable manner. Such messages may be placed in advertisements or communicated through other means, such as television and/or radio. I believe that limiting and/or delaying media access may interrupt communication patterns the inmate may develop with the outside world, and ensure that the media is not used to communicate information that threatens the national security.

## SAM CONTACT INFORMATION

Any questions that you or your staff may have about this memorandum or the SAM directed herein should be directed to the Office of Enforcement Operations, Criminal Division, U.S. Department of Justice, 1301 New York Avenue, N.W., JCK Building, Room 900, Washington, D.C. 20530-0001; and telephone (202) 514-6809.

LIMITED OFFICIAL USE